UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

PRINCE MONEY BROWN,
   Plaintiff,

vs.                                                                 No. 05-1322

GUY PIERCE AND JOSEPH DECHENE, et.al.,
   Defendants

### ORDER

This cause is before the court for consideration of the defendants' motion for summary judgement. [d/e 34]

### I. BACKGROUND

The plaintiff, a state prisoner, filed his complaint pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Pontiac Correctional Center. On December 21, 2005, the court conducted a merit review of the plaintiff's complaint. The court advised the plaintiff that he needed to identify defendants that were personally responsible for his claims. *See* December 21, 20005 Order. The plaintiff then filed a motion to add additional defendants to his case which was allowed. [d/e 21, 25]

On July 27, 2006, the court conducted a second merit review of the plaintiff's complaint. The plaintiff has the following surviving claim: Defendants Warden Guy Pierce, Lieutenant Kevin DeLong and Correctional Officer Brad Knight violated the plaintiff's Eighth Amendment rights based on the conditions of his segregation cell.

### II. FACTS

The following facts are taken from the defendants' motion for summary judgement and the response filed by the plaintiff.

The plaintiff was housed in segregation in the East Cell House, Cell No. 619, from August 18, 2004 to February 8, 2005. The plaintiff says his cell contained a urine stained mattress and he developed a rash after sleeping on it.

The defendants say the plaintiff requested and was seen by medical staff on 11 occasions while in segregation:

>Aug. 24, 04: "ear condition" noted by CMT and doctor.
>Sept. 19, 04: sick call, recheck ear, "resolved ear condition."
>Oct. 4, 2004: RN/CMT, treatment for dermatitis.
>Nov. 25, 2004: RN notes declaration of hunger strike.
>Nov. 28, 2004: Doctor notes three days on hunger strike, no chronic medical problem
>Nov. 30, 2004: RN/CMT notes related to hunger strike.
>Dec. 1, 2004: CMT notes related to hunger strike.
>Dec. 2, 2004: CMT/RN/Doctor notes on hunger strike
>Dec. 3, 2004: CMT note on hunger strike
>Dec. 20, 2004 CMT notes burring vision, refer to eye clinic.
>Jan. 25, 2005- Optometrist visit.
>Feb. 9, 2005- transfer to Stateville Correctional Center.

The defendants state that there is one "documented assessment for a rash" during the plaintiff's stay in segregation. On October 4, 2004, the nurse and certified medical technician noted a rash on the plaintiff's arms that was pin size. No doctor referral was made. The plaintiff was instructed on the use of cream that was given to him and told to ask for follow up care if there was no improvement.

## III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## IV. ANALYSIS

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES.

The defendants first argue that the plaintiff has failed to exhaust his administrative remedies as required.  The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The defendants say the plaintiff attached a grievance to his complaint, but this grievance does not pertain to the issues in his complaint.  Instead, the plaintiff is complaining about his placement in segregation and a denial of medical care.  The defendants say the plaintiff has failed to specify when he was denied care or what ailment he suffered from.

The defendants further claim that the plaintiff failed to appeal any grievance concerning cell conditions to the Administrative Review Board.  Jackie Miller, the Chairperson with the Office of Inmate Issues, says she has searched the records of the Administrative Review Board.  Miller says the plaintiff submitted a grievance to the Governor's Office.  The grievance was then forwarded to the board.  The board responded with a letter to the plaintiff on February 2, 2005, which instructed the plaintiff to follow the grievance procedure at his facility.

> A review of the ARB records indicate that Mr. Brown, #N70332, did not file grievance in accordance with departmental rule 504, regarding his cell conditions while he was housed at Pontiac Correctional Center in the segregation unit from August 21, 2004 through February 8, 2005. (Def. Mot, Ex. B, Miller Aff., p.2)

The plaintiff responds that on August 30, 2004, he submitted an emergency grievance to Defendant Warden Pierce.  The plaintiff says he received no response.  The plaintiff has

3

submitted a copy of his grievance, but there is no indication whether the grievance was submitted and the defendants have not directly responded to this claim.

The plaintiff then wrote a series of letters complaining about his cell conditions. Either the plaintiff or his attorney sent letters to the Illinois Department of Corrections Chief Deputy Director and Defendant DeLong. He plaintiff says he also wrote a letter to Defendant Pierce on October 25, 2004 and sent the defendant a copy of two grievances. The second grievance is also dated October 25, 2004 and again complains about the mattress in his cell.

The plaintiff received a memorandum from Defendant Pierce dated November 14, 2004 which simply informs the plaintiff that his letter to the Deputy Director has been forwarded to Defendant Pierce for review and response. The plaintiff says he never received a response. However, the plaintiff has enclosed a second memorandum from Counselor Eaton dated November 1, 2004. This memorandum indicates the plaintiff has claimed he received a letter from the Deputy Director advising him to resubmit his grievance because the counselor did not promptly address it. The plaintiff is asked to provide a copy of the letter. The memorandum states that normally once a grievance has been addressed, you can not re-file it. The plaintiff says he never received his grievance back, but makes no mention of whether he complied with the memorandum.

There is simply not enough information before the court to address the issue of whether the plaintiff exhausted his administrative remedies. The letters sent by the plaintiff or his attorney are not relevant. The plaintiff must follow the grievance procedure in order to exhaust his administrative remedies. However, if the plaintiff properly submitted one or two emergency grievances to the warden and received no response, he has exhausted all available administrative remedies. *See Lewis v Washington,* 300 F.3d 829, 833 (7th Cir. 2002). The Court requires prisoners to follow the administrative rules. *Pozo v. McCaughtry,* 288 F.3d 1022, 1025 (7th Cir. 2002) Nonetheless, a remedy may become 'unavailable,' if prison employees do not respond to a properly filed grievance. *Lewis,* 300 F.3d at 833.

The plaintiff has provided copies of two emergency grievances that address the claims in his complaint. There is not enough information before the court from either party to determine whether those grievances were properly filed and if so, did the plaintiff receive a response? The motion for summary judgement for failure to exhaust is therefore denied.

B. EIGHTH AMENDMENT

The defendants next argue that the plaintiff has failed to demonstrate that the conditions of his cell rose to the level of a constitutional violation. An Eighth Amendment claim alleging cruel and unusual punishment has two requirements: 1) the deprivation suffered was objectively, "sufficiently serious." *Farmer v Brennan,* 511 U.S. 825, 834 (1994); and 2) the defendants were deliberately indifferent to that serious deprivation. *Delaney v. DeTella,* 256 F.3d 679, 683 (7th Cir. 2001). "While the Constitution does not require that prisons be comfortable, prison conditions do violate the Constitution where they 'deprive inmate of a minimal civilized measure of life's necessities.'" *Delaney,* 256 F.3d at 683, *quoting Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Not all prison conditions trigger the Eighth Amendment scrutiny. Only deprivations of basic human needs like food, medical care, sanitation and physical safety. *Id.*

The plaintiff says he was forced to sleep on an "extremely dirty mattress with a large urine stain on it..." (Plain. Resp, p. 6) The plaintiff says all the defendants were liable because they knew about the conditions he lived in based on the letters he or his attorney sent to Defendant Pierce. The plaintiff also claims he personally told the defendants about his mattress problems and asked for a new one.

The plaintiff further claims the defendants had to know about the condition of his cell because:

> it has been a frequent occurrence for incorrigible inmates housed in punitive segregation unit would toss urine and feces at inmates passing by their cells they would cover the whole cell walls and mattresses with feces and urine before leaving out of segregation. (Plain. Resp., p. 7)

However, the plaintiff provides no further information about this claim or any documentation to support it. He does not provide any specific examples, nor does he even claim that he was a victim of this conduct on any occasion.

The defendants state that the plaintiff has no evidence that the defendants were aware that sleeping on the alleged urine-stained mattress placed the plaintiff in any risk of harm. The defendants say the plaintiff has not claimed the defendants intended to expose him to harm or refused him medical care. While the plaintiff was diagnosed with a rash and treated on one occasion, the defendants say there is no evidence the rash was caused by the mattress. There is also no evidence the rash caused any long term damage or lasted for any length of time. There are no other claims that the conditions of the plaintiff's cell were severe or placed his health and safety at risk.

The court notes that in *Wilson v. Schomig,* 863 F.Supp 789 (N.D. Ill. 1994), an inmate claimed he was in a dirty and dusty cell infested with roaches for approximately one year. The plaintiff said his mattress was stained with urine and feces and the toilet had feces on and around it. In addition, the ceiling of his cell leaked when it rained. The court found that most of the alleged conditions did not rise to the level of a constitutional violation. "Although a closer call, plaintiff's claim with regard to the urine and feces stained mattress also falls short of the objective standard of seriousness. Indeed, while not a pleasant condition of confinement, there is no allegation that Wilson suffered any physical harm from the stains on his mattress." *Id* at 795.

In the case before the court, the only alleged harm is that the plaintiff suffered from a rash on one occasion and he has provided a paucity of information about this claim. The plaintiff does not say where his rash was located or how long it lasted or whether he had any further problems after he received skin cream from the medical technician. The plaintiff does not claim that he suffered any long lasting effect from the rash. In addition, the plaintiff has not presented any basis for his claim that the rash was caused by the mattress.

The court notes that the plaintiff did go on a hunger strike about a month and a half after he reported the rash. However, the only reference the plaintiff makes to his hunger strike is a claim that he was trying "to obtain better medical treatment from a real doctor on November 25, 2004." (Plain resp.,p. 3). However, the plaintiff does not provide any further explanation. The plaintiff does not claim what condition he suffered from. The court also notes that the plaintiff was monitored during his hunger strike by medical staff and no health problems were noted relating to a rash or his cell conditions.

Finally, several courts have held that a rash resulting from cell conditions is a *de minimus* injury that does not rise to the level of a constitutional violation or that some evidence linking the conditions and the rash must be presented. *Mase v Henry County Jail*, 2006 W 3091046 at 1 (W.D. Va. Oct. 27, 2006) (even if plaintiff "suffered from a rash, such minor skin conditions do not rise to the level of a "serious or significant physical injury." ) *Hamm v Riley*, 2007 WL 137761 at 2 (D.S.C. May 7, 2007)(no evidence overcrowding caused rash, no evidence of any actual harm); *Holder v Hebert,* 2007 WL 4299996 at 3 (W.D. La. Nov. 8, 2007) (rash on legs is a *de minimus* physical injury.); *Lives v Camden Co. Dept of Corrections*, 225 F. Supp2d 450 (D.N.J. 2002) (no evidence unsanitary shower conditions caused rash, no evidence or harm).

The motion for summary judgement is granted.

**ITS IS THEREFORE ORDERED that:**

**1) The defendant's motion for summary judgement is granted pursuant to Fed. R. Civ. P. 56. [d/e 34]   The clerk of the court is directed to enter judgment in favor of**

the defendant in accordance with this order.  The parties are to bear their own costs.  This case is terminated.

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal** *in forma pauperis* **should set forth the issues the plaintiff plans to present on appeal.**  *See* **Fed. R. App. P. 24(a)(1)c.  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $250.00 from the plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $250.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $250.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $250.00.**

**4) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 4th day of March, 2008.

                          s\Harold A. Baker
            _____
                          HAROLD A. BAKER
                  UNITED STATES DISTRICT JUDGE